Joseph P. Moodhe (jpmoodhe@debevoise.com)
Lee A. Greenwood (lgreenwo@debevoise.com)
Joshua Weigensberg (jweigens@debevoise.com)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6241

*Attorneys for Plaintiff Ski Bowl Realty Member LLC*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x
SKI BOWL REALTY MEMBER LLC,                             :
                                                        :
                    Plaintiff,                          :
                                                        :     No. 12-CV-_____
         - against -                                    :
                                                        :     ECF Case
                                                        :
                                                        :
DAVID C. CRIKELAIR and                                  :
THOMAS P. DOUGHERTY, JR.,                               :
                                                        :
                    Defendants.                         :
------------------------------------------------------- x

## DECLARATION OF JEFFREY PISANO

I, Jeffrey Pisano, declare as follows:

1. I am a Vice President at J.P. Morgan Investment Management Inc. J.P. Morgan Investment Management is the manager of investment fund Excelsior II, LLC, which is the sole member and manager of Ski Bowl Realty Member LLC ("Ski Bowl"), the plaintiff herein. I am familiar with Ski Bowl's involvement with FrontStreet Mountain Development LLC ("FrontStreet" or the "Company") and its attempts to develop a large tract of land in North Creek, Warren County, New York adjacent to Gore

Mountain (the "Property"), which is governed by a limited liability company agreement (as defined herein, the "Agreement") between and among Ski Bowl, David C. Crikelair ("Crikelair") and Thomas P. Dougherty, Jr. ("Dougherty") (collectively, "Defendants"), and a group of other investors (together with Crikelair and Dougherty, the "Original Members"). I am also familiar with Ski Bowl's attempts in 2011 and 2012 to exercise its right to sell the Property pursuant to the Agreement.

2. I submit this declaration based on personal knowledge, and on information and belief, in support of Ski Bowl's Application for a preliminary injunction to prevent Crikelair and Dougherty, and all those acting in concert or participation with them, from communicating to the Original Members that the Notice is invalid, and from interfering with the delivery of the Third Offer Notice to the Original Members for their consideration (or alternatively mandating the delivery of the Third Offer Notice to the Original Members for their consideration).

3. No prior application for this relief has been made to this or any other Court.

**The Agreement**

4. Upon information and belief, FrontStreet was formed on February 1, 2005, as a limited liability company under the laws of Delaware, in order to buy and own the Property with the aim of developing the Property for use as ski slopes, hotels, restaurants, retail establishments, and other associated recreational developments. Crikelair and Dougherty were the Managers of the project. Upon information and belief, Crikelair and Dougherty, along with over 30 other investors, contributed capital to FrontStreet

subsequent to its formation and prior to the involvement of Ski Bowl, pursuant to an operating agreement.

5. Upon information and belief, Ski Bowl entered into the Amended and Restated Limited Liability Company Agreement of FrontStreet Mount Development LLC (the "Agreement") with the Defendants and Original Members on June 23, 2006, which amended and restated the original operating agreement of FrontStreet. The Agreement made Ski Bowl a Member of FrontStreet alongside Crikelair, Dougherty, and the Original Members. A true and correct copy of the Agreement is attached as Exhibit 1. As of 2006, Ski Bowl acquired a 25% interest in FrontStreet in exchange for capital contributions totaling $3 million. Ski Bowl has invested additional amounts exceeding $500,000 to fund capital expenditures for infrastructure and permit and licensing fees.

6. Under the development plan that existed at the time Ski Bowl invested in FrontStreet, the project was supposed to be in the fifth of six development stages by June 2011. By that date, however, only a fraction of the scheduled development of the Property had occurred and it remained in its first development stage, as it does today when it should be in its final development phase. In fact, Crikelair and Dougherty, through an entity they controlled, had constructed just four townhouses (two for themselves) and infrastructure facilities needed to service the subdivision in which those townhouses are located, together with some other ancillary improvements. Since no other Vertical Improvements had been constructed and sold, Crikelair and Dougherty had not been able to realize any profit from resales of developed lots, nor earn any fees

payable under Section 10.10 of the Agreement relating to the development, sale and management of the Property.

7.     As of September 2011, Crikelair and Dougherty had failed to develop the Property in a manner and within the time as contemplated under the Agreement, during which time Ski Bowl had contributed more than $3.5 million to FrontStreet. Ski Bowl concluded that its continued investment and involvement in the Company and the Property was adverse to its financial interests, and therefore determined to exercise its rights under the Agreement to sell the Property, whether to the other Members or to a third party.

8.     On September 9, 2011, I sent an Offer Notice pursuant to Section 10.3(a) of the Agreement (the "First Offer Notice") to FrontStreet's Original Members by Federal Express, in care of Crikelair and Dougherty. The First Offer Notice provided our good faith determination of the fair market value of the Property and other material terms, as required by Section 10.3(a). A true and correct copy of the First Offer Notice is attached as Exhibit 2. Upon information and belief, Crikelair and Dougherty did not deliver Ski Bowl's First Offer Notice to the other Original Members (although they advised them generally that an offer had been made).

9.     On October 21, 2011, I received a response to the First Offer Notice from Dougherty, who claimed to be responding on behalf of the Original Members. Dougherty rejected the Notice as "fatally invalid and ineffective." A true and correct copy of Dougherty's October 21, 2011 letter to me is attached as Exhibit 3.

10. As a result, Ski Bowl was unable to move forward with the sale of the Property at that time.

11. On November 7, 2011, I sent a letter responding to Dougherty's October 21, 2011 letter and enclosing an amended Offer Notice pursuant to Section 10.3(a) of the Agreement (the "Second Offer Notice") to FrontStreet by Federal Express, to the attention of Dougherty, with a carbon copy to Crikelair. I added to the Second Offer Notice additional terms requested by Dougherty in his October 21, 2011 letter. The Second Offer Notice provided our good faith determination of the fair market value of the Property and other material terms, as required by Section 10.3(a). A true and correct copy of my November 7, 2011 letter to FrontStreet and the enclosed Second Offer Notice is attached as Exhibit 4.

12. On December 20, 2011, I received a response to my November 7, 2011 letter and the Second Offer Notice from Dougherty, who claimed to be responding on behalf of the Original Members. Dougherty also rejected the Notice as "fatally invalid and ineffective." A true and correct copy of Dougherty's December 20, 2011 letter to me is attached as Exhibit 5.

13. Upon information and belief, Crikelair and Dougherty did not deliver or communicate Ski Bowl's Second Offer Notice to the Original Members, but instead interposed meritless objections. As a result, Ski Bowl was again unable to move forward with the sale of the Property at that time.

14. On January 25, 2012, I sent a letter responding to Dougherty's December 20, 2011 letter and enclosing an amended Offer Notice pursuant to Section

10.3(a) of the Agreement (the "Third Offer Notice") to FrontStreet by Federal Express, to the attention of Dougherty, with a carbon copy to Crikelair. I added to the Third Offer Notice additional terms requested by Dougherty in his December 20, 2011 letter. The Third Offer Notice again provided our good faith determination of the fair market value of the Property and other material terms, as required by Section 10.3(a). A true and correct copy of my January 25, 2012 letter to FrontStreet and the enclosed Third Offer Notice is attached as Exhibit 6.

15. On March 8, 2012, I received a response to my January 25, 2012 letter and the Third Offer Notice from Dougherty, who claimed to be responding on behalf of the Original Members. For a third time, Dougherty rejected the Notice as "fatally invalid and ineffective." A true and correct copy of Dougherty's March 8, 2012 letter to me is attached as Exhibit 7.

16. Upon information and belief, Crikelair and Dougherty did not deliver or communicate Ski Bowl's Third Offer Notice to the Original Members, but instead interposed meritless objections. As a result, Ski Bowl was again unable to move forward with the sale of the Property.

17. Ski Bowl had preliminary conversations with real estate brokers in the vicinity of the Property. However, because of the cloud of uncertainty that Crikelair and Dougherty have created by frustrating the sale of the Property pursuant to the terms of the Agreement, Ski Bowl has been impaired from undertaking efforts to solicit interest in the Property.

6

18. The Property is a unique site located adjacent to a popular ski area in upstate New York that is expected to be attractive to regional developers. Delay in marketing the Property to prospective developers threatens to leave us unable to monetize the unique value of the Property for the benefit of Ski Bowl and all the Members of FrontStreet. In the meantime, Ski Bowl is exposed to ongoing liabilities arising out of FrontStreet's ownership of non-income producing property that it would not incur if the Property was sold.

19. Crikelair and Dougherty's tactics have deprived Ski Bowl of the ability to exercise Ski Bowl's bargained-for contractual rights. In 2006, Ski Bowl bargained for a right to sell the Property, pursuant to certain procedures, after a period of five years. It is now the middle of 2012, and Crikelair and Dougherty have been preventing Ski Bowl from exercising those rights for more than eight months, with no prospect that this situation will change. The interpretation of Section 10.3(a) that they continue to assert effectively holds hostage our bargained-for contractual sale rights.

20. Crikelair and Dougherty's tactics have also deprived Ski Bowl of the ability to exercise its rights with respect to its interest in the Property. By interpreting the Agreement in such a way that creates perpetual purchase and development rights for themselves when none exist, Crikelair and Dougherty have made the Property unmarketable.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at New York, New York this 11th day of June, 2012.

_____
Jeffrey Pisano