**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------- x

SKI BOWL REALTY MEMBER LLC,    :
      :
      Plaintiff,    :
      :    No. 12-CV-4607 (PGG)
      :
    - against -    :
      :    ECF Case
      :
      :
DAVID C. CRIKELAIR and    :
THOMAS P. DOUGHERTY, JR.,    :
      :
      Defendants.    :
---------------------------------------------------- x

## REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S APPLICATION FOR A PRELIMINARY INJUNCTION

Joseph P. Moodhe (jpmoodhe@debevoise.com)
Lee A. Greenwood (lgreenwo@debevoise.com)
Joshua Weigensberg (jweigens@debevoise.com)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6241

*Attorneys for Plaintiff Ski Bowl Realty Member LLC*

New York, New York
August 1, 2012

**TABLE OF CONTENTS**

Page

ARGUMENT ..................................................................................................................1

I.      SKI BOWL IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS. ..............1

        A.      Defendants' Jurisdictional Arguments Lack Merit...................................................1

                1.      Necessary and Indispensable Parties ............................................................1

                2.      Improper Venue ...........................................................................................4

                3.      Lack of Standing and Ripeness....................................................................5

        B.      Defendants' Interpretation of Section 10.3 of the Agreement Is Baseless. .............5

        C.      Ski Bowl Is Likely to Succeed on its Claim for Breach of the Covenant of
                Good Faith and Fair Dealing......................................................................................9

        D.      Ski Bowl Is Likely to Succeed on its Claim for Breach of Fiduciary Duty..........10

        E.      Ski Bowl's Claims Are Not Barred by the Doctrine of Unclean Hands................10

II.     SKI BOWL WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF A
        PRELIMINARY INJUNCTION. ......................................................................................11

CONCLUSION...........................................................................................................................13

## TABLE OF AUTHORITIES

CASES

*Case Fin., Inc. v. Alden*, No. 1184-VCP, 2009 WL 2581873 (Del. Ch. Aug. 21, 2009)................2

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557
    (1980).........................................................................................................................12

*Chamison v. HealthTrust, Inc.*, 735 A.2d 912 (Del. Ch. 1999) .......................................................9

*CP Solutions PTE, Ltd. v. Gen. Electric Co.*, 553 F.3d 156 (2d Cir. 2009) ................................3, 4

*DLJ Mortg. Capital, Inc. v. Cameron Fin. Grp., Inc.*, No. 07 Civ. 3746 (LAP), 2007 WL
    4325893 (S.D.N.Y. Dec. 4, 2007)..................................................................................4

*Fitzgerald v. Cantor*, No. C.A. 16297-NC, 1998 WL 842316 (Del. Ch. Nov. 10, 1998) ..............9

*Gorran v. Atkins Nutritionals, Inc.*, 464 F. Supp. 2d 315 (S.D.N.Y. 2006) .................................12

*Jews for Jesus, Inc. v. Jewish Cmty. Relations Council of New York, Inc.*, 968 F.2d 286
    (2nd Cir. 1992)..............................................................................................................12

*Kelly v. Blum*, No. 4516-VCP, 2010 WL 629850 (Del. Ch. Feb. 24, 2010)..................................10

*MasterCard Int'l, Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377 (2d Cir. 2006) .......................2

*Pellaton v. Bank of New York*, 592 A.2d 473 (Del. 1991)................................................................8

*Polargrid LLC v. Videsh Sanchar Nigam Ltd.*, No. 04 CV 9578 (TPG), 2006 WL
    2266351 (S.D.N.Y. Aug. 7, 2006) ..............................................................................2, 4

*Precision Instruments Mfg. Co. v. Automotive Maint. Mach. Co.*, 324 U.S. 806 (1945) ..............10

*Sacody Technologies, Inc. v. Avant, Inc.*, 862 F. Supp. 1152 (S.D.N.Y. 1994) .............................5

*Stone v. Ritter*, 911 A.2d 362 (Del. 2006) ....................................................................................10

*Supermex Trading Co. v. Strategic Solutions Grp., Inc.*, No. Civ. A. 16183, 1998 WL
    229530 (Del. Ch. May 1, 1998)......................................................................................8

*Universal Studios Inc. v. Viacom Inc.*, 705 A.2d 579 (Del. Ch. 1997)...........................................11

*Varsames v. Palazzolo*, 96 F. Supp. 2d 361 (S.D.N.Y. 2000) .......................................................11

*Weber v. King*, 110 F. Supp. 2d 124 (E.D.N.Y. 2000) ....................................................................3

*Wisdom Import Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101 (2d Cir. 2003) ...........................11

**STATUTES AND OTHER AUTHORITIES**

28 U.S.C. § 1391....................................................................................................................4

Federal Rule of Civil Procedure 19 ...............................................................................1, 3

Plaintiff Ski Bowl Realty Member LLC submits this memorandum in further support of its request for a preliminary injunction against Defendants and in reply to their Memorandum in Opposition ("Opp.")

## ARGUMENT

## I.    SKI BOWL IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS.

### A.    Defendants' Jurisdictional Arguments Lack Merit.

Defendants assert three jurisdictional grounds for dismissal: (1) failure to join the other investors (the "Members") in FrontStreet Mountain Development LLC ("FrontStreet" or the "Company"), as well as FrontStreet itself as necessary and indispensable parties, whose joinder would destroy diversity jurisdiction; (2) improper venue; and (3) lack of standing and ripeness. Each of these grounds is without merit.

#### 1.    Necessary and Indispensable Parties

A party is considered "necessary" under Federal Rule of Civil Procedure 19(a)(1) if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> >
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

Defendants assert that the non-Defendant Members are necessary parties because they are parties to the Agreement that is at issue in this action. Opp. at 9. Courts caution against such a formalistic test, however, in favor of a "pragmatic analysis of the effect of a potential party's

absence" of the factors listed in Rule 19(a)(1). *Polargrid LLC v. Videsh Sanchar Nigam Ltd.*, No. 04 CV 9578 (TPG), 2006 WL 2266351, at *9 (S.D.N.Y. Aug. 7, 2006) (quotations omitted); *see also MasterCard Int'l, Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 385-89 (2d Cir. 2006) (describing factors that inform Rule 19(a)(1) analysis).

Unlike the situations in the cases cited by Defendants, where the courts concluded that the liability of non-parties was implicated, Opp. at 9, Ski Bowl does not allege any wrongdoing by or seek relief against the Members. The Court can thus accord complete relief among the existing parties on the claims Ski Bowl asserts. The thrust of Ski Bowl's complaint is to redress its claim that Defendants, by asserting a patently false interpretation of the Agreement, have improperly interfered with its right to end its investment in FrontStreet through the sale mechanism set forth in Section 10.3. The claimed interest of the Members in developing Vertical Improvements through Vertical Improvements LLCs is, by the terms of the Agreement, purely derivative of and secondary to Defendants' purchase and development rights, which Defendants here are vigorously defending. *See Polargrid*, 2006 WL 2266351, at *10 (reasoning "identity of interests" supports conclusion that absent party not necessary under Rule 19(a)(1)). Beyond Defendants' unsupported statements (Opp. at 10), there is no evidence that disposition of this action—which relates to Defendants' conduct with respect to Ski Bowl's exercise of its rights—will leave any party subject to a substantial risk of inconsistent obligations.

Nor is FrontStreet a necessary party under Rule 19(a)(1). Ski Bowl asserts direct claims for breaches of duties owed by Defendants to Ski Bowl, and for declaratory and other relief arising from Defendants' baseless interpretation of the Agreement designed to defeat Ski Bowl's rights. Ski Bowl does not seek to recover on behalf of FrontStreet; Ski Bowl seeks to remedy the impairment of its right to end its investment through a sale of the Property. *See Case Fin., Inc. v.*

*Alden*, No. 1184-VCP, 2009 WL 2581873, at *5, *7 (Del. Ch. Aug. 21, 2009) (describing difference between direct and derivative claims).  Nor is Ski Bowl asking the Court to determine ownership of or title to the Property, or asking the Court to "invade the coffers" of FrontStreet like the plaintiffs in *Weber v. King*, 110 F. Supp. 2d 124, 128 (E.D.N.Y. 2000), the case on which Defendants rely (Opp. at 10).  Ski Bowl is asking for relief solely with respect to its rights under Section 10.3 of the Agreement.

Even if the Court were to find that either the Members or FrontStreet are necessary parties, neither are indispensable.  The Second Circuit has flatly rejected a bright line test with respect to this issue as "inconsistent" with the flexible approach of Rule 19(b).  *CP Solutions PTE, Ltd. v. Gen. Electric Co.*, 553 F.3d 156, 159 (2d Cir. 2009).  Under Rule 19(b), if a party cannot be joined (as Defendants assert here jurisdictional grounds would not permit), the Court must "determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed" by analyzing whether (1) a judgment rendered without the absent party might prejudice either the absent party or the existing parties; (2) such prejudice can be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures; (3) whether a judgment rendered without the absent party would be adequate; and (4) whether the plaintiff has an adequate remedy if the action is dismissed for nonjoinder.  Fed. R. Civ. P. 19(b).  Though Ski Bowl could file an action in state court, the other Rule 19(b) factors do not support required joinder.  First, no prejudice to the existing parties, the Members or FrontStreet will result from nonjoinder.  To the extent the Members have interests in purchasing or developing parcels of the Property through Vertical Improvements LLCs, those interests will be fully protected by Defendants, who assert the very arguments relating to a matter of law (the interpretation of the Agreement) the success of which are a predicate to the Members' derivative

3

interests.  *See Polargrid*, 2006 WL 2266351, at *10.[1]  Second, FrontStreet would not be

prejudiced by nonjoinder because Ski Bowl asserts direct claims for itself, not derivative claims

on behalf of FrontStreet, and seeks no relief against it.  Finally, a judgment rendered in the

absence of the Members and FrontStreet would be adequate because the relief sought can be

attained by a declaratory judgment and injunctive relief against the Defendants, thereby

permitting the process contemplated by Section 10.3 of the Agreement to proceed.  *See CP*

*Solutions PTE,* 553 F.3d at 160.  Thus, a motion based on Rule 19 will fail.

> **2.      Improper Venue**

Defendants' improper venue argument is baseless.  A civil action may be brought in a

judicial district "in which a substantial part of the events or omissions giving rise to the claim

occurred . . . ."  28 U.S.C. § 1391(b)(2).  Ski Bowl alleges that negotiations of the Agreement,

which created the contractual rights that underlie Ski Bowl's claims, occurred in this District

(Complaint ¶ 11); Defendants corroborate these allegations by asserting that Ski Bowl's

attorneys, also located in this District, were the primary draftsmen of the Agreement.  Opp. at 3.

Further, Ski Bowl's Notices with which Defendants are alleged to have interfered were sent from

this District, and the receipt of the letters setting forth Defendants' objections also occurred in

this District.  Complaint ¶¶ 28-29, 31-32, 34-35; *see DLJ Mortg. Capital, Inc. v. Cameron Fin.*

*Grp., Inc.*, No. 07 Civ. 3746 (LAP), 2007 WL 4325893, at *4 (S.D.N.Y. Dec. 4, 2007) (holding

§ 1391(a)(2), predecessor to the current § 1391(b)(2), "may be satisfied by as little as a single

communication transmitted to or from the district in which the cause of action was filed, given a

sufficient relationship between the communication and the cause of action") (internal quotations

---

[1]     Defendants' further argument that their interests diverge from the Members because of the
allegation that they have interfered with the consideration of Ski Bowl's offer is no more
persuasive, insofar as Ski Bowl is fully pressing that argument.

omitted) (citing *Sacody Technologies, Inc. v. Avant, Inc.*, 862 F. Supp. 1152, 1157 (S.D.N.Y. 1994)). That other judicial districts would also be proper venues does not support a conclusion that this venue is improper.

### 3.    Lack of Standing and Ripeness

The Complaint alleges that Defendants have repeatedly asserted a meritless interpretation of the Agreement in three separate letters over the course of nearly five months, depriving Ski Bowl of its rights under the Agreement. Complaint ¶¶ 29, 32, 35. Ski Bowl clearly has standing to vindicate those rights, and the relief requested is appropriate to redress its alleged injury. Defendants mischaracterize Ski Bowl as seeking a "gag order" restraining Defendants from communicating that Ski Bowl's offer is "bad." Opp. at 13. Rather, Ski Bowl seeks to enjoin Defendants from interfering with the sale process (which Defendants acknowledge Ski Bowl has a right to pursue, Opp. at 14) through their false assertions. In any event, whether or not Ski Bowl is determined to be entitled to a particular remedy does not bear on whether it lacks standing to remedy the injury it claims. On the other hand, Defendants' ripeness argument, Opp. at 13, ignores half of Ski Bowl's allegations—it is not just *physical* delivery about which it complains, but *effective* delivery and consideration of the Offer, which cannot occur when Defendants baselessly assert that the Notices can be ignored as invalid. Without a declaration and accompanying relief by the Court vindicating Ski Bowl's rights and ending Defendants' interference, the sale process authorized by the Agreement will never proceed.

### B.    Defendants' Interpretation of Section 10.3 of the Agreement Is Baseless.

As Ski Bowl explained in detail in its initial moving papers, Motion at 14-18, a sale of the Property pursuant to Section 10.3 of the Agreement is not burdened by the purchase and development rights described in Section 10.10. Section 10.3 permits Ski Bowl "to enter into a purchase and sale agreement, and consummate the sale of, the Property, on behalf of the

Company with any party . . . " as long as the Members have the option to purchase either the Property or Ski Bowl's membership interest in FrontStreet first. Declaration of Jeffrey Pisano ("Pisano Decl.") Ex. 1 at 38-40. Section 10.10(a), in contrast, permits FrontStreet to sell "portions of the Property" to Vertical Improvements LLCs managed by the Defendants or to third-party developers. *Id.* Ex. 1 at 43-44. Section 10.10(d) then establishes a formula for the purchase price that Vertical Improvements LLCs must pay the Company for the required "portion of the Property" for the listed Vertical Improvements. *Id.* Ex. 1 at 45-47. Section 10.3 does not mention the survival of the Section 10.10 Vertical Improvement LLC purchase and development rights.[2] Moreover, it is simply not logical to read the Section 10.10 rights as forever surviving a sale of the Property pursuant to Section 10.3. The terms of Section 10.10 contemplate FrontStreet's continued existence and ownership of the Property, both of which are no longer the case following a sale of the Property pursuant to Section 10.3.

Defendants point to no language in Section 10.3 that would support their alternative reading. Instead, they offer strained interpretations of two other provisions in the Agreement, Sections 10.10(d) and 9.1(b). Opp. at 17, 19. Section 10.10(d) describes the purchase price that Vertical Improvements LLCs must pay for portions of the Property to be developed as Vertical Improvements, at a price which may be adjusted after the sale based on an updated budget. Pisano Decl. Ex. 1 at 45-47. But that adjustment requires a precedent sale, which can only occur when the Company still owns the Property. That adjustments pursuant to Section 10.10(d) for *previously sold parcels* may occur after a sale under Section 10.3 does not logically compel the

---

[2]   That Section 10.10 likewise does not mention Section 10.3 is consistent—not inconsistent (Opp. at 15)—with the conclusion that the Section 10.10 rights do not survive. Survival would have been provided somewhere in the Agreement in light of the terms evidencing their extinguishment.

conclusion that future development rights under Section 10.10 for unsold portions survive.  To the contrary, Section 10.10(d) contains provisions requiring the purchase price to be paid to the Company, adjusted based on the number of Members who invested in the Vertical Improvement LLC, and approval of certain purchase prices by the Members.  *Id.* These provisions refute Defendants' position, and underscore that the rights described in Section 10.10 are operative only so long as FrontStreet owns the Property.

Defendants' argument concerning Section 9.1(b) is equally misconceived. Acknowledging that "a sale of any remaining Property would trigger the winding down of the Company," they assert that FrontStreet would still be obligated to sell portions of the Property pursuant to Section 10.10 in that process.  Opp. at 19.  That reasoning merely assumes the conclusion.  Defendants' interpretation of the Agreement would require FrontStreet to sell portions of the Property to Vertical Improvements LLCs or third-party developers at a time when it has already sold the Property.  Moreover, FrontStreet could never wind down if Defendants never exercised their purported development rights—obviously contrary to the expressed intent of Section 9.1.

Defendants also claim that Ski Bowl has been inconsistent in its interpretation of Section 10.3 because the Third Offer Notice (Pisano Decl. Ex. 6), states that the sale of the Property would be subject to two agreements and to certain rights described in Section 4.1(d) of the Agreement.  Opp. at 18-19.  Defendants are incorrect.  The inclusion of these conditions is fully consistent with Ski Bowl's position on the survival of the purchase and development rights described in Section 10.10.  Ski Bowl recognized that the May 7, 2009 Purchase Agreement and July 10, 2009 Indemnity Agreement and Purchase Price Agreement obligate FrontStreet to sell certain parcels of the Property to FrontStreet RealtyOne Company, LLC ("FSRO") and

7

Defendants, respectively.  Pisano Decl. Ex. 6.  Similarly, Ski Bowl determined that receipt of the

Adirondack Park Agency's site plan approval, Affidavit of Thomas P. Dougherty, Jr.

("Dougherty Aff.") ¶ 17, resulted in the vesting of the Defendants' rights described in Section

4.1(d) to select home sites.  Pisano Decl Ex. 1 at 12, 18.  As such, Ski Bowl recognizes in the

Third Offer Notice that a sale of the Property pursuant to Section 10.3 will be subject to the

already executed agreements and previously vested rights.  *Id.* Ex. 6.  Those factual predicates

distinguish the future, non-vested development rights that Defendants claim burden the Property

in perpetuity.  Ski Bowl's interpretation is thus consistent across the differing factual

circumstances.

Unable to demonstrate the validity of their interpretation of the Agreement based on its

language, Defendants argue that the Agreement is ambiguous and thus permits the Court to look

beyond the four corners of the contract to consider extrinsic evidence.  Opp. at 15-16.  Yet,

Defendants do not point to any language within Section 10.3 that they claim is ambiguous, and,

as discussed above, they have failed to show that Section 10.3 is reasonably susceptible to their

interpretation.  Instead, they simply assert that they knew what was intended, and that their

alleged understanding must be acknowledged.  *Id.*  That is not the law.  Where a contract, as a

whole and by its language, is clear, the Court should not consider extrinsic evidence.  *See*

*Pellaton v. Bank of New York*, 592 A.2d 473, 478 (Del. 1991).  Even if the consideration of such

evidence was permissible, Defendants do not identify any evidence: they do not point to any

prior agreements, communications, or courses of dealing beyond their own unstated intentions

and understandings.  Dougherty Aff. ¶¶ 21-23, 42; *see Supermex Trading Co. v. Strategic*

*Solutions Grp., Inc.*, No. Civ. A. 16183, 1998 WL 229530, at *3, *9 (Del. Ch. May 1, 1998)

(noting relevant extrinsic evidence includes "overt statements and acts of the parties, the business

context, prior dealings between the parties, [and] business custom and usage in the industry," not "subjective understandings of a party to a contract which are not communicated to the other party"). Because there is no ambiguity, and the Agreement clearly does not envision the survival of the purchase and development rights described in Section 10.10, Ski Bowl will prevail on its claims concerning the proper construction of the Agreement.

      **C.**      **Ski Bowl Is Likely to Succeed on its Claim for Breach of the Covenant of Good Faith and Fair Dealing.**

As explained in its Motion, Motion at 18-21, Ski Bowl will prove that (1) Defendants owed Ski Bowl a duty of good faith and fair dealing to apply the terms of the Agreement in a reasonable manner that (2) Defendants breached by repeatedly asserting an unreasonable interpretation, which (3) resulted in damages to Ski Bowl. *See Fitzgerald v. Cantor*, No. C.A. 16297-NC, 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998) (describing elements); *cf. Chamison v. HealthTrust, Inc.*, 735 A.2d 912, 921-23 (Del. Ch. 1999) (holding defendant violated implied covenant of good faith and fair dealing through unreasonable interpretation of a counsel-selection provision in a contract). Defendants cite no authority concerning this claim in their Opposition. Instead, Defendants point out that Ski Bowl amended its prior Notices and that the Members purportedly agreed with Defendants' responses to those Notices. Opp. at 20-21. Though Ski Bowl did amend its first two Notices to address unrelated issues raised by Defendants, Pisano Decl. Exs. 3, 5, Defendants continue to press their baseless position that the purchase and development rights described in Section 10.10 survive a sale of the Property pursuant to Section 10.3. *Id.* Ex. 7. As described in Section I.B, by maintaining that unreasonable interpretation in the face of Ski Bowl's attempts to exercise its sale rights, Defendants have breached the duty of good faith and fair dealing they owe to Ski Bowl in an effort to deprive Ski Bowl of its rights.

**D.      Ski Bowl Is Likely to Succeed on its Claim for Breach of Fiduciary Duty.**

Ski Bowl showed in its Motion, Motion at 21-23, that (1) Defendants owed a fiduciary

duty of loyalty directly to Ski Bowl that (2) Defendants breached by interpreting the Agreement

in a way that benefits themselves and harms Ski Bowl's ability to exercise its sale rights, which

(3) injured Ski Bowl.  *See Stone v. Ritter*, 911 A.2d 362, 369-70 (Del. 2006) (describing

elements); *cf. Kelly v. Blum*, No. 4516-VCP, 2010 WL 629850, at *11 (Del. Ch. Feb. 24, 2010)

(holding plaintiff alleged sufficient facts to support breach of fiduciary duty claim where

managers entered into a transaction designed to eliminate plaintiff's membership interest in an

LLC).  Again, Defendants cite no authority casting doubt on this claim.  Defendants argue that

Ski Bowl could have exercised its right to send its Notices directly to the Members.  Opp. at 22-

23.  That does not address Ski Bowl's right to have Defendants deliver the Notices in a manner

that effectuated its rights under Section 10.3—rights that Defendants had a fiduciary obligation

to ensure were protected.  Defendants' unreasonable interpretation of the Agreement's relevant

provisions and declaration that the Third Offer Notice was void is plainly designed to preserve

their own financial opportunities and to prevent Ski Bowl from engaging in the offer and sale

process established in Section 10.3.

**E.      Ski Bowl's Claims Are Not Barred by the Doctrine of Unclean Hands.**

Defendants' invocation of the equitable defense of unclean hands is mystifying.  As

Defendants note, the doctrine is applicable to "plaintiffs determined to have engaged in

unconscionable or bad faith conduct."  Opp. at 25; *see Precision Instruments Mfg. Co. v.

Automotive Maint. Mach. Co.*, 324 U.S. 806, 815 (1945) (requiring proof of misconduct).  The

facts described by Defendants—that Ski Bowl was allowed to withdraw its investment in FSRO

in November 2008 (Dougherty Aff. ¶ 18) and then, nearly three years later, attempted to exercise

its rights under Section 10.3 of the Agreement—do not rise to this level.  It is puzzling how Ski

Bowl's acknowledged contractual right to pursue a sale of the Property pursuant to Section 10.3 can permit invocation of the doctrine of unclean hands. It does not. *See Universal Studios Inc. v. Viacom Inc.*, 705 A.2d 579, 599 (Del. Ch. 1997) (holding defense of unclean hands inapplicable where party's activities were not prohibited by the contract at issue).

## II.   SKI BOWL WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF A PRELIMINARY INJUNCTION.

Ski Bowl has suffered and will continue to suffer irreparable harm as a result of Defendants' wrongful conduct. Ski Bowl is being deprived of (1) its minority rights as a Member of FrontStreet; and (2) control over its interest in real property. Courts recognize that both deprivations have intrinsic value and are not necessarily compensable at law. With respect to the first, Ski Bowl's reliance on *Wisdom Import* is entirely proper; Defendants' insistence on a baseless interpretation of the Section 10.3 sale provisions has effectively destroyed Ski Bowl's rights as a minority Member of FrontStreet to end its investment and membership in FrontStreet through the provisions of Section 10.3. *See Wisdom Import Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 114-15 (2d Cir. 2003). Unable to gain consideration of a valid Notice, Ski Bowl is left unable to move forward with the process to end its membership in FrontStreet—through either a sale of the Property (that would lead to the winding down of FrontStreet) or the purchase of its interest, pursuant to the carefully-outlined process described in Section 10.3. Defendants' conduct frustrates Ski Bowl's minority role in the operations of FrontStreet, in particular as it relates to the disposition of the Property and the wind-down of the Company. Relatedly, this same conduct by Defendants has resulted in a deprivation of control over its interest in real property, which courts have also held can constitute irreparable harm. *See Varsames v. Palazzolo*, 96 F. Supp. 2d 361, 367 (S.D.N.Y. 2000) (citing cases). Defendants fail to address either irreparable injury.

11

With respect to the balance of the hardships, a preliminary injunction would not violate Defendants' constitutional rights or restrict their fiduciary duties.  Opp. at 28-29.  An injunction would merely prevent Defendants from using an unreasonable interpretation of the Agreement's sale provisions or engaging in conduct that interferes with Ski Bowl's exercise of its contractual rights.  The First Amendment does not protect speech constituting interference with contractual rights.  *Jews for Jesus, Inc. v. Jewish Cmty. Relations Council of New York, Inc.*, 968 F.2d 286, 296 (2nd Cir. 1992).  Defendants remain free to argue that Ski Bowl's offer is a bad deal (Opp. at 13); they are not free to obstruct the Agreement's carefully outlined sale process by falsely announcing as void a Notice that is clearly valid in order to usurp opportunities that do not belong to them.  Such false statements, which constitute commercial speech—"expression related solely to the economic interests of the speaker and its audience," *see Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 561 (1980)—are afforded no protection by the First Amendment.  *Gorran v. Atkins Nutritionals, Inc.*, 464 F. Supp. 2d 315, 326 (S.D.N.Y. 2006).  The issuance of a preliminary injunction by the Court will promote the public interest by ensuring that the Defendants abide by their contractual obligations as outlined in the Agreement.

## CONCLUSION

For the foregoing reasons, Ski Bowl respectfully requests that this Court grant in its

entirety its application for a preliminary injunction, together with such other relief as this Court

deems just and proper.

Dated:      New York, New York
            August 1, 2012

                        DEBEVOISE & PLIMPTON LLP


                        By: __/s/ Joseph P. Moodhe_____

                        Joseph P. Moodhe (jpmoodhe@debevoise.com)
                        Lee A. Greenwood (lgreenwo@debevoise.com)
                        Joshua Weigensberg (jweigens@debevoise.com)

                        919 Third Avenue
                        New York, New York 10022
                        (212) 909-6241

                        *Attorneys for Plaintiff Ski Bowl Realty Member LLC*